# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 11-81443 |
| T&A Holdings, LLC, | ) | |
| All Smiles Dental, PC, | ) | (Jointly Administered) |
| Timothy Stirneman, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | Judge Lynch |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

Movant SummitBridge National Investments III LLC ("SummitBridge") seeks to reopen this jointly administered Chapter 11 case, in which a plan was confirmed and final decree entered, for the sole purpose of then dismissing the case. SummitBridge alleges that RBS Citizens, N.A. ("RBS Citizens"), whose claim was allowed and provided for in the confirmed Chapter 11 plan, transferred its interest after the closure of the bankruptcy case to SummitBridge by means of an allonge to the original promissory note and assignment of certain security interests granted by T&A Holdings, LLC on or about December 19, 2014.[1]

SummitBridge and Debtors T&A Holdings, LLC, All Smiles Dental, PC and Timothy Stirneman were given the opportunity for extensive briefing, which the court

---

[1] This court makes no determination at this time as to the Movant's standing. Notably SummitBridge has not filed an assignment of claim in accordance with Fed. R. Bankr. P. 3001(e)(2). Additionally, the documents attached to the motion to reopen refer only to a promissory note, a mortgage and an assignment of leases and rents granted by T&A Holdings, LLC. The court therefore makes no determination at this time as to any rights that SummitBridge may have obtained through the purported assignments or any rights it may have against the other two jointly administered debtors, Timothy Stirneman or All Smiles Dental, P.C. under the plan, the purportedly assigned agreements or under any other agreement.

has reviewed.   The parties declined the opportunity for an evidentiary hearing, instead opting to rest on their written submissions and oral argument.   The court finds that SummitBridge has failed to meet its burden of demonstrating cause to reopen the case, and therefore the Motion to Reopen will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor T&A Holdings, LLC filed a voluntary petition under Chapter 11 on April 1, 2011.   Debtors Timothy Stirneman and All Smiles Dental, PC each subsequently filed voluntary petitions under Chapter 11 on March 23, 2012.   As of T&A Holding's petition date, Dr. Stirneman, a dentist, was the 100% owner of T&A Holdings and All Smiles.   As of that petition date and through at least November 21, 2012, when the Debtors' disclosure statement was approved, All Smiles was the operating entity for Dr. Stirneman's practice and employed Dr. Stirneman as well as several other employees.   T&A Holdings owned real estate in Algonquin, Illinois (the "Algonquin Property") which it leases to All Smiles and out of which the practice operates.   On May 11, 2012, this court granted the Debtors' motion for joint administration of the three cases.   Although a single joint plan for all three Debtors was confirmed, the Debtors have not been substantively consolidated.

RBS Citizens, N.A. filed a proof of claim for $3,381,694.67, of which it asserted $1,475,000 to be secured by a first mortgage in the Algonquin Property and $1,064,289.00 to be secured by certain personal property owned by All Smiles. (Claim No. 3-2.)[2] On May 11, 2012, the court determined the value of the Algonquin Property

___

[2] RBS Citizens's initial claim was filed May 20, 2011.  Its amended claim was filed December 27, 2012.

to be $1,700,000 for purposes of adequate protection and found that the junior mortgage held by the U.S. Small Business Administration in the Algonquin Property was completely undersecured such that its claim should be treated as unsecured. On December 27, 2012, RBS Citizens filed an election under Section 1111(b)(2) to have its claim treated as fully secured. The election stated that it was made "with respect to the Debtors' proposed Plan of Reorganization filed with the court on December 26, 2012."[3] On the same day and less than 10 minutes before it filed its Section 1111(b)(2) election, RBS Citizens filed what it purported to be an agreed motion to allow its claim "as filed." RBS Citizens stated in its motion that as "part of the negotiations of the terms of DEBTORS' Fourth Modified Plan of Reorganization and Fifth Amended Disclosure Statement, RBS and DEBTOR'S agreed to accept and approve the amount of RBS' claims as filed in each of the DEBTORS' bankruptcy filings." The court granted the motion and entered the agreed order allowing RBS Citizens' claim "as filed" on January 10, 2013.

T&A Holdings filed its initial proposed Chapter 11 plan of reorganization on April 11, 2012.[4] The court entered an order on May 11, 2012 granting the Debtors' motion for the joint administration but not the substantive consolidation of the T&A Holdings, All Smiles and Stirneman bankruptcy cases. The Debtors filed a joint modified Chapter 11 Plan on August 13, 2012, and a Second Amended Disclosure

---

[3] As discussed below, no Chapter 11 plan was actually filed on December 26, 2012. The last plan filed, which was the plan of reorganization ultimately confirmed, was filed on November 20, 2012.
[4] Unsecured creditor Briarwood Office Center II, LLC actually filed the initial proposed plan on February 2, 2012. T&A Holdings, LLC initially filed a motion to adopt Briarwood's plan as its own, which motion was rendered moot after T&A Holdings filed its own proposed plan. Briarwood's plan was apparently abandoned.

Statement the same day. The Debtors subsequently modified each several times before confirmation. Eventually, the Fifth Amended Disclosure Statement was approved and the court set a balloting deadline of December 28, 2012 for acceptance or rejection of the Fourth Modified Plan that had been filed on November 20, 2012. A total of four ballots were filed, two from the class of general unsecured claims, one from the class of equity claims and one from the class of equipment lease claims. All four ballots accepted the plan. No rejections of or objections to the plan were filed.

Counsel for the Debtors, for RBS Citizens and for the U.S. Trustee appeared at the confirmation hearing held January 16, 2013. No objections to confirmation were raised and the court confirmed the November 20, 2012 plan, asking Debtors' counsel to prepare and submit a proposed order.[5] The order confirming the Debtors' joint Fourth Modified Plan of Reorganization was entered on March 21, 2013, *nunc pro tunc* to January 16, 2013.[6]

As confirmed the Chapter 11 plan of reorganization states that Dr. Stirneman "shall be responsible for making payments required under this Plan" and that he "will continue in the dental operations of ASD, which will allow T&A and ASD to make its payments under this Plan in the ordinary course, out of funds generated by the

---

[5] The Debtors' initial motion to approve the disclosure statement states in its electronic title that the Debtors seek "conditional" approval of the disclosure statement. However, the document itself makes no such reference, nor does the term appear in the court's November 21, 2012 order approving it. While Section 1125(f) provides for conditional approval of a disclosure statement in a small business case, none of the three Debtors indicated in their petitions that they were "small business debtors" and based on the total claims, none would appear to qualify as such. The court stated at the confirmation hearing on January 16, 2013, that to the extent the earlier approval was conditional, the disclosure statement was now approved in full.

[6] An order was entered by the court on January 16, 2013 directing Debtors' counsel to serve notice that the plan had been confirmed on January 16, 2013, but this notice order was inadvertently docketed as the confirmation order.

business." The plan lists nine different classes of creditors, but makes no express distinction as to whether any such creditors have claims solely against one Debtor as opposed to all three. With respect to RBS Citizens and the Small Business Administration, however, the plan states in a footnote that when RBS Citizens "and the SBA obtained their judgment against T&A, it also obtained a joint judgment against ASD and Dr. Stirneman. However, [RBS Citizens] and the SBA can only receive payments equal to the total amount of the judgment."

The plan provides for two possible repayment schedules for RBS Citizens' allowed claim depending on whether or not it made an election under Section 1111(b) of the Bankruptcy Code. In either case, RBS is to be paid its principal on the entire claim in full. In both cases the plan provides that RBS Citizens is to retain its lien in the collateral of T&A Holdings and All Smiles to secure its claim under the plan.

If the Section 1111(b) election is not made, the plan provides that RBS Citizens is to be paid the secured portion of its claim (based on the value of the collateral securing the claim) in full with 6.0% *per annum* interest in monthly payments over 7 years based on a 25-year amortization schedule, with a balloon payment at the end. The unsecured portion is to be paid in full, but without interest, in "annual quarterly payments" over 7 years. RBS Citizens' proof of claim, in which the creditor claimed a secured claim of $2,539,289.00 and unsecured deficiency of $842,405.07, was allowed in full. Applying the formula for amortization, this results in monthly payments of $16,360.67 on the secured portion and payments of $30,085.90 every three months on the unsecured portion over the term of the plan. Over the course of

the ensuing 84 months RBS Citizens would be paid $2,216,701.35, together with an additional balloon payment of $2,157,938.71 in the final month of the plan, for a total payment of $4,374,640.06 to this creditor.

In the event that RBS Citizens made a Section 1111(b)(2) election, the plan provides that RBS Citizens' "combined total of its secured and unsecured claims [will be] treated as if it were totally secured by the Property" and the bank would be paid "in monthly payments over seven (7) years based on a twenty five (25) year amortization rate that both total the allowed amount of the claim and have a value on the effective date of plan at least equal to the value of its security interest in the Property." This provision makes clear that RBS Citizens must be paid at least its total allowed claim of $3,381,694.67 by the 84th month. The provision is also clear that if interest is to apply, it will run at 6.0% APR. From there, however, the provision is unclear as to how the payments are to be amortized other than to provide that they will be made in monthly installments with a balloon payment due in the 84th month. A document filed by the Debtor without leave and after confirmation on January 28, 2013, entitled "Amended Exhibit 'C' to Fifth Amended Disclosure Statement only as to RBS Citizens Bank in light of §1111(b) election," seems to suggest that the monthly payments will be at least $16,360.67.[7] However, two

---

[7] T&A Holdings contends in its Supplemental Response to the Motion that this document, which is simply a 300-month amortization schedule of a loan of $2,539,289.00 at 6% interest, is evidence that the principal amount of RBS Citizens' claim was restructured and written down to $2,539,289 under the plan. (ECF No. 318.) T&A Holdings' proffered interpretation is plainly inconsistent with the terms of the confirmed plan, however, which requires payment of at least the total face value of RBS Citizens' full allowed claim of $3,381,694.67. The "Amended Exhibit C" was filed by the Debtors without leave and filed after the plan had already been confirmed and could not have modified the plan. Additionally, the document is clearly not intended to describe the actual payments required under the plan, as it has no balloon payment and monthly payments which extend much longer than 84 months.

documents filed by the Debtor on March 12, 2013 in connection with its February 27, 2013 Motion for Final Decree indicate that the Debtor made actual payments under the plan to RBS Citizens of $19,168.69 on March 9, 2013, which the document described as "RBS Secured $16,360.67; RBS Unsecured $2,808.02." (ECF No. 276.) The document also indicates that the "adequate protection" payments made to RBS Citizens on February 27, 2013 total $17,276.81.

In any case, the plan also provides that if RBS Citizens is paid the full amounts provided for in the plan, the personal guarantee of Dr. Stirneman will be discharged. Other than this reference, neither the plan nor the confirmation order references discharge or any injunction under the plan,[8] nor do they contain language modifying the statutory discharge of debt upon confirmation for non-individual debtors imposed by Section 1141(d) of the Bankruptcy Code.[9] The plan also provides for payment to other creditors, in full or in part, either in cash or in installments over five to seven years.

On March 21, 2013, the court entered a final decree on the Debtors' motion, finding that the order confirming the plan had become final, the Debtors had

---

At best it is an indication of the Debtors' belief at the time that the monthly payments to RBS Citizens under the plan would be $16,360.67.

[8] The plan does include a general retention of jurisdiction by this court, including to "issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of this Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Person or Entity."

[9] As discussed below and contrary to the allegations of SummitBridge, the plan was not a plan of liquidation and there is no evidence that the exception to discharge found in Section 1141(d)(3) or any other exception applies to the two corporate Debtors.

commenced payments under the Plan, the deposit required by the Plan had been distributed, all payments had been made to the U.S. Trustee and any contested matters and motions had been fully resolved.

On March 23, 2016, SummitBridge, claiming to be the successor in interest to RBS Citizens, filed this motion to reopen the Chapter 11 bankruptcy case. SummitBridge brings the motion to reopen the jointly administered cases for the purpose of filing a motion to dismiss the bankruptcy cases, alleging that the Debtors failed to make certain payments required by the confirmed plan and failed to pay certain real estate taxes for the Algonquin Property. The Debtors oppose the motion, arguing that SummitBridge has adequate remedies to enforce its rights under the plan in state court through foreclosure of its collateral and that dismissal of the bankruptcy would not be in the best interests of other creditors who are being paid under the terms of the confirmed plan.

## DISCUSSION

A bankruptcy court has the power to reopen a closed bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." *Brown v. UAL Corp. (In re UAL Corp.)*, 809 F.3d 361, 364 (7th Cir. 2015) (quoting 11 U.S.C. § 350(b)). The decision to reopen is within the bankruptcy court's discretion, and two "nonexclusive factors that a bankruptcy court should consider in deciding whether to reopen a closed case are whether the moving party would be entitled to relief if the case were reopened and the length of time it has been closed." *Id.* Additionally, where there is an appropriate state-court or other forum to litigate the movant's potential

claims, that fact will weigh against reopening. *Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010).

SummitBridge argues that it is entitled to dismissal of the case because both a "material default by the debtor with respect to a confirmed plan" and "failure timely to pay taxes owed after the date of the order for relief" expressly constitute "cause" for dismissal of the case. 11 U.S.C. § 1112(b)(4)(I), (N). But, this case is now closed and SummitBridge has not demonstrated that any legitimate purpose will be served by reopening the case only to then immediately dismiss it.

The authority cited by SummitBridge for dismissal of the case on the basis of a default under the terms of a confirmed plan all involve cases that remained open and pending, and where no final decree had been entered. *In re Potts*, 188 B.R. 575 (Bankr. N.D. Ind. 1995); *In re T.S.P. Industries*, 117 B.R. 375 (Bankr. N.D. Ill. 1990); *In re Jartran, Inc.*, 71 B.R. 938 (Bankr. N.D. Ill. 1987); *In re AMC Morg. Co.*, 213 F.3d 917 (6th Cir. 2000); *In re H.R.P. Auto Center, Inc.*, 130 B.R. 247 (Bankr. D. Ohio 1991); *In re Sundale, Ltd.*, 471 B.R. 300 (Bankr. S.D. Fla. 2012).[10] But the issue here is not whether a material default is cause for dismissal—that it is cause is already clear from the text of Section 1112(b)(4). Instead, the question before this court is what

---

[10] In *H.R.P.* and *T.S.P.* the courts refused a request to convert the case to Chapter 7, finding that because property of the estate had already vested in the debtor upon confirmation of the plan, there would be no estate for a Chapter 7 trustee to administer or purpose for converting. The court in *Sundale* agreed with *T.S.P.* that, "in the absence of a plan provision to the contrary, conversion does not revest property in the estate that vested in the reorganized debtor upon confirmation," but disagreed with the conclusion that there would be no estate, noting that many Chapter 7 cases involve estates with little or no assets. 471 B.R. at 306. The court acknowledged that "there may be little or nothing of value for unsecured creditors in light of the material defaults under the Plan," but found that conversion was in the best interest of creditors since, for example a trustee may have "the ability to bring avoidance actions, as well as any other causes of action that may only be exercised by an estate fiduciary." *Id.* In contrast here SummitBridge does not seek conversion of the case.

SummitBridge seeks to accomplish by reopening a closed case for the sole purpose of then dismissing it.

As noted in *Potts,* the terms of a confirmed Chapter 11 plan remain binding post-dismissal as does the discharge granted through or in connection with such plan. 188 B.R. at 581-82. This case is now well past the 180-day deadline for revocation of an order of confirmation pursuant to Section 1144 for the revocation of confirmation orders "procured by fraud." 11 U.S.C. § 1144. *See also In re Longardner & Assocs., Inc.* 855 F.2d 455, 460 (7th Cir. 1988) ("Under the Code, however, section 1144 is the only avenue for revoking confirmation of a plan of reorganization."); FED. R. BANKR. P. 9024 ("a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144.").[11]  Further, SummitBridge admits that it does not seek to revoke confirmation.  But as recognized in *H.R.P.,* a "confirmed plan does not become ineffective by debtor's failure to comply with its terms." 130 B.R. at 256. Dismissal has the effect of restoring certain liens or other property interests avoided under certain specified bankruptcy provisions. *See* 11 U.S.C. § 349(b).  But here the confirmed plan provides for RBS Citizens to retain its lien and SummitBridge has not identified any property interest it seeks to restore through dismissal.

Dismissal post-confirmation can also serve a purpose for certain open cases such as when dismissal may be necessary for a creditor to enforce its rights under the plan in another court.  Dismissal can work to free creditors from the automatic stay

---

[11] In *obiter dicta,* the court in *Longardner* also suggested that "the bankruptcy court as a court of equity could have fashioned relief for the creditor." 855 F.2d at 462 (citing 11 U.S.C. § 105(a)). *But see, e.g., Law v. Siegel,* 134 S.Ct. 1188, 1194 (2014) (Section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.")

to permit them to take action to enforce the terms of the plan or other claims that have not been discharged. *See* 11 U.S.C. § 362(c)(2)(B) (automatic stay other than against property of the estate terminates upon dismissal); 11 U.S.C. § 362(c)(1) (automatic stay as against property of the estate terminates when property is no longer property of the estate); 11 U.S.C. § 349(b)(3) (unless court orders otherwise, upon dismissal property of the estate revests in the entity in which such property was vested as of the petition date). But here property of the estate vested in the Debtors upon confirmation, 11 U.S.C. § 1141(b), and the automatic stay as against the Debtors already terminated when the case was closed. 11 U.S.C. § 362(c)(2)(A).[12]   Thus, despite SummitBridge's vague suggestion that it is enjoined from seeking to enforce defaults under the plan in a state court venue, the automatic stay is not a barrier.

Nor should a state court have concerns about concurrent jurisdiction in the interest of comity or abstention. Again, this case is long closed. As stated in *Potts*, "[f]ollowing confirmation, the bankruptcy court retains jurisdiction for limited purposes. Following dismissal, the bankruptcy court has no further jurisdiction and creditors are free to enforce their plan-created contractual rights in the appropriate state court forum." 188 B.R. at 582 (quoting *In re Page*, 118 B.R. 456, 460 (N.D. Tex. 1990)).   SummitBridge has not demonstrated why this court should exercise jurisdiction over enforcement of the plan, particularly when SummitBridge admits that it intends to seek enforcement through a state court. As to this point, this court finds the reasoning of the court in *In re Canal St. Ltd. Partnership* to be particularly

---

[12] The automatic stay as to the two corporate Debtors terminated even earlier, when they received a discharge upon confirmation of the plan. 11 U.S.C. § 362(c)(2)(C); 11 U.S.C. § 1141(d)(1).

instructive. 260 B.R. 460 (Bankr. D. Minn. 2001). In that decision, the court rejected the "broad-brushed theory that post-confirmation conversion should always be ordered merely because [the predecessors to renumbered Sections 1112(b)(4)(M) and (N)] contemplate post-confirmation conversion without language of limitation by time or event." 260 B.R. at 462 n.2. The court went on to explain that bankruptcy courts do "not have exclusive jurisdiction over issues stemming from a post-confirmation default" and the "call for exercising concurrent jurisdiction is increasingly tenuous as time passes after confirmation." *Id.*

SummitBridge cites language from *In re Jordan Mfg. Co., Inc.* where the court, quoting from the Advisory Notes to Bankruptcy Rule 3022, stated that a "final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to Section 350(b) of the Code." 138 B.R. 30, 35 (Bankr. C.D. Ill. 1992). But *Jordan* involved objections to the entry of a final decree and did not involve a request to reopen a closed case. Indeed, immediately after the language quoted by the movant here the *Jordan Mfg.* court went on to state:

> Questions of jurisdiction are distinct from questions of entry of final decrees and should be considered separately. At this point in time, nothing in this opinion should be construed as impacting any jurisdictional issue which might subsequently come before this Court.

138 B.R. at 35-36. This court, too, does not need to determine the full extent of its potential post-decree jurisdiction to enforce or interpret its orders because SummitBridge admits that what it seeks is the dismissal of this case, and that it

intends to enforce its rights in the state court and not in the bankruptcy court. [13]

In similar situations other bankruptcy courts have denied requests to reopen a Chapter 11 case after confirmation and entry of the final decree on the basis of a default under the terms of the plan and at the request of a single creditor. For example, in *In re OORC Leasing, Inc.*, the court held that, because "[o]ther courts are available to vindicate [a creditor's] rights under the confirmed plan," it was not appropriate to reopen a Chapter 11 case post-confirmation and post-final decree for the purpose of seeking to convert the case to Chapter 7, even if the creditor believed the bankruptcy court would be a more convenient forum. 359 B.R. 227 (Bankr. N.D. Ind. 2007).

The Seventh Circuit, too, has emphasized that it is incorrect to believe "that anyone who has been a debtor in bankruptcy has eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding." *In re Zurn*, 290 F.3d 861, 864 (7th Cir. 2002). Instead, the Seventh Circuit explains:

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. Formerly a ward of the court, the debtor is emancipated by the

---

[13] At least one court may have granted a motion to reopen a case to clarify the meaning of a Chapter 11 plan provision. In *Warren v. Young*, the appellate panel for the Ninth Circuit affirmed the dismissal of a Chapter 11 bankruptcy case closed for several years for failure to make payments as required under the plan. 2015 WL 3407244 (9th Cir. B.A.P. May 28, 2015). The court did not explain why the case had been reopened, nor examine the effect of dismissal. Nor is there any indication whether the motion to reopen was contested. Rather, in a footnote, the appellate panel noted that according to the motion to reopen—which was not subject of appeal—the creditor had asked the bankruptcy court to reopen the case for a "clarification of [the] terms of [the] order confirming the plan." However, as discussed below, the plan and the confirmation order at issue here speak for themselves. SummitBridge has not asked for relief from or modification of the order or plan or for this court to issue injunctive relief to enforce the plan. Instead, SummitBridge's motion to reopen seeks the dismissal of the case.

plan of reorganization.

*Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991). "Once a bankruptcy plan is effectuated, all indications from the Code would incline us to treat the reorganized entity as we would any other company." *In re Jartran, Inc.*, 886 F.2d 859, 870 (7th Cir. 1989) (finding that a reorganized debtor who filed a second Chapter 11 case with a liquidating plan after the confirmed plan of reorganization from the first Chapter 11 case failed was not acting in bad faith). It is true that in *Zurn* the court found that the plan had been fully performed, and noted that a case *could* be reopened "to enforce the plan and discharge." 290 F.3d at 864. But SummitBridge has not shown that reopening is appropriate here. SummitBridge seeks to reopen the case not to modify the plan and not to seek an injunction from this court. Indeed, SummitBridge is quite clear in its motion that it seeks to reopen the case only to then obtain the dismissal of the reopened case.

SummitBridge's supplemental briefings, recognizing that "dismissal will not unwind the Confirmed Plan," instead request for the first time that in addition to reopening and dismissing the case, the court "clarify that the Confirmed Plan did not invalidate the pre-petition Judgment Orders" entered by the state court in the foreclosure case. (*See* ECF No. 316.) SummitBridge's supplemental briefings also suggest that the Debtors did not receive a discharge at confirmation and that the confirmed plan did not modify RBS Citizen's rights.

SummitBridge is correct that Dr. Stirneman did not receive a discharge upon confirmation. The plan is clear that "the personal guarantee of Stirneman [as to T&A

Holdings' and All Smiles' obligations to RBS Citizens] shall be discharged" only if the claims of RBS Citizens "are paid pursuant to the terms of this Plan." It is undisputed that Dr. Stirneman has not completed all payments under the plan and that this court has not granted him a discharge. Pursuant to 11 U.S.C. § 1141(d)(5), in "a case in which the debtor is an individual ... unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan."

In contrast, T&A Holdings and All Smiles both received discharges of pre-confirmation debts upon confirmation, subject to the terms and conditions of the plan. For non-individual debtors, confirmation of the plan discharges them from debts as specified unless "otherwise provided ... in the plan, or in the order confirming the plan." 11 U.S.C. § 1141(d)(1).[14] While neither the plan nor the confirmation order expressly stated that T&A Holdings' or All Smiles' debts were discharged, it did not need to.

SummitBridge next argues that the exception found in Section 1141(d)(3) applies here:

The confirmation of a plan does not discharge a debtor if—

---

[14] Unlike in Chapter 12 and Chapter 13 cases, where discharge typically is not entered until the plan is completed, 11 U.S.C. §§ 1228(a) and 1328(a), discharge in Chapter 11 typically occurs upon plan confirmation. The Bankruptcy Code was amended in 2005 to provide that individuals who file under Chapter 11 do not typically receive a discharge until completion of plan payments. 11 U.S.C. § 1141(d)(5)(A). However, for non-individual Chapter 11 debtors, discharge is still generally at the time of confirmation. *See, e.g.,* 8 COLLIER ON BANKRUPTCY ¶ 1141.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("However, unlike for a non-individual debtor, an individual debtor does not generally receive a discharge on plan confirmation. Rather, the chapter 11 discharge generally follows the chapter 13 model, under which the debtor receives a discharge only upon completion of all payments under the plan.").

(A) the plan provides for the liquidation of all or substantially all of the
property of the estate;

(B) the debtor does not engage in business after consummation of the
plan; and

(C) the debtor would be denied a discharge under section 727(a) of this
title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3). But the plan is not a liquidating plan and it appears that the

Debtors engaged in business post-consummation. Indeed, the confirmed plan

provides for periodic payments over a period of seven years and expressly states that

"Dr. Stirneman will continue in the dental operations of [All Smiles], which will allow

T&A and [All Smiles] to make its payments under this Plan in the ordinary course,

out of funds generated by the business." SummitBridge argues that the Section

1141(d)(3) exception applies because the plan states that if the Debtors are unable to

refinance or pay the balloon payment owing to RBS Citizens at the end of seven years,

the Debtors "will agree to a liquidation of its assets by the Bank either in or out of

Bankruptcy Court." But for the exception contained in Section 1141(d)(3) to apply,

"*all* three elements must be met." *In re Jahelka*, 442 B.R. 663, 673 (Bankr. N.D. Ill.

2010) (emphasis supplied) (citing *In re T–H New Orleans Ltd. P'ship*, 116 F.3d 790,

803 (5th Cir. 1997)). Here, there is no evidence that the Debtors did not engage in

business after consummation of the plan as contemplated in the plan. Additionally,

as the court in *T-H New Orleans* held, "where one alternative of a Plan is liquidation

of the property two years after a plan's effective date, it [does not] constitute[]

liquidation under 1141(d)(3)(A)." 116 F.3d at 804. That is even more so here, where

the implied "alternative" is invoked only after seven years of payments through

business income and only with respect to one of many claims dealt with in the plan.

SummitBridge points out that the plan provides for payment of RBS Citizens' claim in full, whether or not the Section 1111(b)(2) election is made, and expressly provides that RBS Citizens "shall retain its lien in the collateral of T&A and [All Smiles]." That does not mean, however, that the Debtors' obligations were not modified from the rights RBS Citizens would have had in the absence of the bankruptcy. RBS Citizens' claim as of the petition date was allowed in its entirety and provided for under the confirmed plan. But its post-petition rights have been modified, at least with respect to T&A Holdings and All Smiles. In allowing RBS Citizens' claim as filed, including the amounts secured and unsecured, this court has already determined that the value of the collateral securing RBS Citizens' claim was less than the claim. Therefore, RBS Citizens is not entitled to subsequently add to its claim unmatured interest that otherwise would have accrued between the petition date and the confirmation date. 11 U.S.C. §§ 502(b)(2), 506(b). Additionally, the plan modified RBS Citizens' right to post-confirmation interest, limiting it to 6% APR and accruing solely on the value of the collateral securing its claim. The plan as confirmed did not provide for a different rate of interest upon default or any late fees or other specific ramifications upon default under the plan. Thus, any right to interest above and beyond that provided for under the terms of the plan was discharged as to T&A Holdings and All Smiles, though not as to Dr. Stirneman.

As to the pre-petition foreclosure judgments, the discharge of T&A Holdings and All Smiles voided such judgments only "to the extent that such judgment is a determination of the personal liability of the debtor with respect to" a discharged

debt. Thus, the discharge does not prevent RBS Citizens or its proper successor from recommencing the foreclosure action solely as against the collateral. However, a Chapter 11 plan may either "modify the rights of holders of secured claims ... or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5). The terms of a confirmed plan are binding on both the debtor and any creditor of the debtor or entity acquiring property under the plan, whether or not the claim or interest of such creditor is impaired under the plan and whether or not such creditor has accepted the plan. 11 U.S.C. § 1141(a).

In *In re Arns*, the court found that the terms of the confirmed plan did not prohibit the creditor from enforcing its rights under the plan after default by recommencing a pre-petition foreclosure case in which it had received a pre-petition judgment of foreclosure and sale. 372 B.R. 876 (Bankr. N.D. Ill. 2007). The court, noting that in drafting the plan the debtor could have inserted a provision "requiring the dismissal of the pending state foreclosure action without prejudice if that was really intended," construed the ambiguity in the plan against the debtor. 372 B.R. at 885. Unlike this case, however, in *Arns,* the creditor alleged that it and the debtor had specifically entered into a side agreement allowing it to recommence the foreclosure proceeding upon plan default. It argued that this agreement was memorialized in language added to the confirmation order providing that:

> In the event the Debtor fails to pay the secured claim of [LaSalle Bank], in full, on or before the maturity date of the Restructured Promissory Note, the Plan injunction shall be immediately modified, without further notice, to permit [LaSalle Bank] to pursue its contractual rights and state remedies with regards to the Burr Ridge Property.

372 B.R. at 880. The confirmation order had similar language permitting the creditor "to pursue its contractual rights and state remedies with regards to the Burr Ridge Property" after a two month default in plan payments and after a 14-day cure period. *Id.* Here, the confirmed plan contains no express provisions on remedies following a default in periodic plan payments. The plan does contain a provision that if the Debtors fail to pay the balloon payment to RBS Citizens by the 84th month and have not secured "refinancing of the Bank Debt or [are] in the process of refinancing that will 'close' within 90 days" of such date, the "Debtor will agree to a liquidation of its assets by the Bank either in or out of Bankruptcy Court."

Additionally, an introductory paragraph in the plan expressly references the state court proceeding, stating that on "December 16, 2010 RBS and the SBA obtained a judgment for foreclosure and sale in the Circuit Court of the 22nd Judicial Circuit, McHenry County, but did not go to sheriffs sale." Nowhere in the plan or confirmation order does the plan mandate dismissal of the action. Finally, the plan states that RBS Citizens "shall retain its lien in the collateral of T&A and ASD." The court finds that, similar to the plan and confirmation order in *Arns*, the confirmed plan, which expressly provided for repayment of 100% of RBS Citizens' claim and retention of its lien, modified only the timing of repayment and the interest to accrue on such claim, and did not modify any right that it had to foreclose upon such lien to enforce the claim as modified upon default under the terms of the confirmed Plan. Thus, to the extent that the Debtors are in default under the plan and seek to enforce no more than RBS Citizens' rights under it, to enforce those rights through the already

pending foreclosure case will not violate the discharge or terms of the plan.[15]

The Debtors and SummitBridge dispute whether or not RBS Citizens made a proper election to have its claim treated as fully secured pursuant to Section 1111(b)(2) of the Bankruptcy Code. SummitBridge suggests that the election was filed by RBS Citizens and procedurally incorrect and thus invalid. However, since the plan has been long confirmed, the issue is really one of interpretation of the confirmed plan.[16] In interpreting plans of reorganization in the context of Chapter 11 cases, the Seventh Circuit has stated that "[p]rinciples of contract law apply to interpreting a plan of reorganization." *In re Airadigm Communications, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010). This is because in Chapter 11 a "confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." *Id.* Whether the election was made or not, here the plan provides for payment of RBS Citizens' claim in full and for it to retain its lien in the collateral of T&A Holdings and All Smiles. The difference in treatment is only as to the repayment schedule and the way interest will accrue on the claim. Neither party has suggested that the issue is material to whether or not the Debtors are in default under the plan. In any event, SummitBridge has not asked this court for a ruling on that issue.[17] Properly so, for it is a matter of contract interpretation

---

[15] However, this court will not furnish an advisory opinion on whether, procedurally state law requires RBS Citizens to commence a new action. Nor will this court offer an advisory opinion on whether SummitBridge would have standing to pursue either the existing foreclosure action or a new action.

[16] In other words, the issue is not necessarily whether the filing of the election was sufficient to give RBS Citizens the right to object to classification of its claim under 11 U.S.C. § 1122 or to plan confirmation under 11 U.S.C. § 1129(7)(B) or what rights it had to vote on the plan, but rather whether RBS Citizens "ma[de] the '1111(b)' election" as that phrase is used in the confirmed plan.

[17] In SummitBridge's Surreply filed October 21, 2016, it states its position that it believes RBS Citizens did not effectively make the Section 1111(b)(2) election, but asks the court only to "clarify that Summit

that can be addressed by the state court.

## CONCLUSION

For the foregoing reasons, the motion to reopen the bankruptcy case will be denied. As such, the motion to dismiss the case will be denied as moot. A separate order shall be entered giving effect to the determinations reached herein.

DATE: November 2, 2016               ENTER:

_____

Thomas M. Lynch
United States Bankruptcy Judge

---

retained its lien in the Property under the Confirmed Plan" and to "clarify that Summit retained its unsecured claim." (ECF No. 337.) But, as just discussed, whether or not RBS Citizens made the Section 1111(b)(2) election, the plan provided for payment of its claim in full and that it retain its lien to secure that claim.